# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RONNIE MARTIN,

                Plaintiff,

v.

TIMOTHY P. GRAY, DOES, and ABC
INSURANCE COMPANY,

                Defendants.

Case No. 20-CV-741-JPS

**ORDER**

Plaintiff Ronnie Martin, a former inmate, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that Defendants violated his rights under the Constitution as well as under federal and state law. (Docket #1). In addition to a motion to proceed *in forma pauperis*, Plaintiff has filed a motion to proceed, (Docket #6), motion for justice, (Docket #8), and motion for a status hearing, (Docket #9). This order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee, screens his complaint, and addresses his other pending motions.

## 1. MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE

The Prison Litigation Reform Act (the "PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to provide a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time as he is able. *Id.*

On October 29, 2020, the Court ordered Plaintiff to pay an initial partial filing fee of $29.83. (Docket #7). Plaintiff paid that fee on November 17, 2020. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. (Docket #2). He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

## 2. SCREENING THE COMPLAINT

### 2.1 Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court construes *pro se* complaints liberally and holds them to a

less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff alleges that, since 2015, Defendant Timothy Gray ("Gray"), a Wisconsin Department of Criminal Investigation ("WDCI") special agent and task-force officer for the Drug Enforcement Agency ("DEA"), and the Doe Defendant ("Doe"), a confidential source, have worked together on a DEA investigation of Plaintiff and others. (Docket #1 at 2–5). Plaintiff alleges that, as a part of the DEA investigation, Doe had several phone conversations with a person to arrange a sale of morphine. (*Id.*) Reporting to Gray, Doe falsely identified Plaintiff as the person he was talking to on the phone and that Plaintiff was arranging the drug sale. (*Id.*) After the phone calls, Doe successfully completed the controlled purchase of morphine on March 20, 2015. (*Id.*) Plaintiff was not the person from whom Doe purchased drugs. (*Id.*)

On September 1, 2017, Plaintiff filed a § 1983 case against Gray. (*Id.*) One month later, in October of 2017, Plaintiff was charged for the alleged delivery of a controlled substance on March 20, 2015, by the Milwaukee District Attorneys' Office. (*Id.*) On December 13, 2017, Plaintiff was taken into custody at the Milwaukee County Jail for the drug charge. (*Id.* at 4–5). Plaintiff states that Gray and Doe caused him to be taken into custody without probable cause, consent, or exigent circumstances. (*Id.* at 7). Plaintiff also claims that based upon Doe's false allegations at the direction of Gray, Gray and Doe "willfully, wantonly and maliciously caused Plaintiff to be charged with a felony and held [him] in custody for more than eleven months." (*Id.* at 7–8). On October 10, 2018, Gray interviewed an individual who provided him with the true identity of the person who had

arranged the drug sale with Doe in March 2015. (*Id.* at 6). On November 7, 2018, the State of Wisconsin dismissed the case against Plaintiff after it determined that it was not Plaintiff on the phone with Doe. (*Id.*) Plaintiff was held at the Milwaukee County Jail for almost one year before the case was dismissed. (*Id.*)

Plaintiff alleges that Gray and Doe both knew that it was not Plaintiff's voice on the phone call arranging the drug deal but, nevertheless, allowed Plaintiff to remain incarcerated. (*Id.*) Plaintiff states that both Doe and Gray are intimately familiar with his voice, as Doe and Plaintiff were close friends and had many conversations, and that Gray had listened to phone calls of Plaintiff and interviewed him. (*Id.*) Plaintiff states that Gray and Doe "knowingly and deliberately conspired to deprive Plaintiff of his Civil Rights." (*Id.* at 7). Further, Plaintiff alleges that Gray allowed Plaintiff to remain in custody because he was upset about the pending § 1983 case against him and he was upset that Plaintiff had refused to cooperate with him. (*Id.* at 6–7).

### 2.3     Analysis

Plaintiff alleges eight claims against Defendants: (1) False Imprisonment; (2) Malicious Prosecution;, (3) Deceit under 28 U.S.C. § 2671; (4) State and Federal Tort; (5) Violation of the Eighth Amendment; (6) Due Process Violation under the Fourth and Fourteenth Amendments; (7) Slavery and Involuntary Servitude in Violation of the Thirteenth Amendment; and (8) Punitive Damages. (Docket #1 at 7–11).

#### 2.3.1     Color of Law

To begin, the Court must address whether Defendant Gray was operating under the color of state or federal law, as this dictates what claims Plaintiff may bring against him. If Gray was operating under the color of

state law, Plaintiff will need to bring his constitutional claims under 42 U.S.C. § 1983. Under § 1983 a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). However, if Gray was operating under the color of federal law, Plaintiff will need to bring his constitutional claims under *Bivens v. Six Unknown Federal Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), rather than under § 1983. *See Hernandez v. Mesa*, 140 S. Ct. 735, 747 (2020) ("We have described *Bivens* as a 'more limited' 'federal analog' to § 1983.").

Based upon the complaint, it appears that Gray was operating under the color of federal law because he was investigating Plaintiff as part of a DEA task-force investigation. (Docket #1 at 2–5). Although Gray was a state employee, he was assigned to a federal task force. In this situation, courts have generally found that the state employee is acting under color of federal law. *See e.g.*, *Guerrero v. Scarazzini*, 274 Fed. Appx. 11, 12 n.1 (2d Cir. 2008) (noting that because the defendant officers were deputized members of a DEA task force, plaintiff's claim was properly brought as a *Bivens* action); *Majors v. City of Clarksville*, 113 Fed. Appx. 659 (6th Cir. 2004) (interpreting a plaintiff's § 1983 claim against local officers acting as DEA task force agents as a *Bivens* claim); *Askew v. Bloemker*, 548 F.2d 673, 677 (7th Cir. 1976) (holding that local law enforcement officer was acting under the color of federal law while assigned to federal agency and during a federally authorized raid); *Amoakohene v. Bobko*, 792 F. Supp. 605, 608 (N.D. Ill. 1992) (holding that local officers arresting someone for a municipal code violation

incident to activities in connection with a DEA task force, of which the officers were members, did not act under color of state law).

Because Gray was acting under the color of federal law rather than under the color of state law, Plaintiff's constitutional claims against him arise under *Bivens*. Therefore, Plaintiff's constitutional claims against Gray are not cognizable under § 1983 and the Court will proceed with screening Plaintiff's constitutional claims against Gray under *Bivens*.

### 2.3.2 *Bivens*

The Supreme Court has recognized a *Bivens* claim in only three cases: *Bivens* (Fourth Amendment unreasonable search and seizure); *Davis v. Passman*, 442 U.S. 228, 248–49 (1979) (Fifth Amendment Due Process Clause gender discrimination); and *Carlson v. Green*, 446 U.S. 14, 17–19 (1980) (Eighth Amendment inadequate medical treatment). "These three cases— *Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). The only relief available in a *Bivens* action is an award of money damages for injuries caused by a defendant acting in his or her individual capacity. *See id.* at 1854–55, 1860.

The Supreme Court has made clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity," and such a remedy will not be available if there are "'special factors' counseling hesitation in the absence of affirmative action by Congress." *Id.* at 1857 (citation omitted). Further, the Supreme Court has emphasized that "for almost 40 years, we have consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez*, 140 S. Ct. at 743.

Courts adhere to a two-step inquiry when deciding whether to extend *Bivens* to new contexts or new defendants. *Id.* First, a court must determine whether the claim presents one of the three *Bivens* claims the Supreme Court has already approved, or whether the claim arises in a "new context" or involves a "new category of defendants." *Id.* (quoting *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). To determine "whether a case presents a new *Bivens* context," a court must resolve whether "the case is different in a meaningful way from previous *Bivens* cases." *Abbasi*, 137 S. Ct. at 1859. If it is, then the context is new. *Id.* "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. The Supreme Court has instructed courts to consider several factors, including:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; [and] the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S. Ct. at 1859–60 (emphasizing that this list is illustrative, not "exhaustive"). If there is a previously recognized *Bivens* claim alleged, then the claim may proceed. If not, then a court advances to the second step.

The second step requires a court to determine whether there are any "special factors that counsel hesitation about granting the extension." *Hernandez*, 140 S. Ct. at 743 (internal quotations and citations omitted). There is not an exhaustive list of special factors that may provide a reason

not to extend *Bivens*, but the "separation-of-powers principles" are central to the analysis:

> We thus consider the risk of interfering with the authority of the other branches, and we ask whether "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," and "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed[.]"

*Id.* (quoting *Abbasi*, 137 S. Ct. at 1857, 1858) (internal citations omitted). Another special factor a court may consider is whether there are alternative methods of relief available because, "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863. In sum, "[i]f there are—that is, if we have reason to pause before applying *Bivens* in a new context or to a new class of defendants—we reject the request." *Hernandez*, 140 S. Ct. at 743.

### 2.3.2.1 Fourth Amendment

The Court first must consider whether Plaintiff's claim arises under a "new context" or implicates a "new category of defendants" from those in *Bivens*, *Davis*, or *Carlson*. Plaintiff alleges that Gray and Doe caused him to be taken into custody without probable cause, consent, or exigent circumstances. (Docket #1 at 7). Plaintiff also claims that Gray and Doe "willfully, wantonly and maliciously caused Plaintiff to be charged with a felony and held in custody for more than eleven months," based upon Doe's false allegations at the direction of Gray. (*Id.* at 7–8). Plaintiff's allegations invoke his rights under the Fourth Amendment. "[T]he Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920

(2017). Because Plaintiff's allegations fall under the Fourth Amendment, the Court must look to the *Bivens* case to determine whether the claims arise in a new context or against a new category of defendants. *See Hernandez*, 140 S. Ct. at 743.

Bivens involved a claim against federal drug agents for an illegal arrest and warrantless search. *Bivens*, 403 U.S. at 389. Under the lenient screening standard, Plaintiff's allegation that he was taken into custody without probable cause, consent, or exigent circumstances could present the same type of claim previously recognized in *Bivens*. Therefore, Plaintiff may proceed on a Fourth Amendment *Bivens* claim, regarding Plaintiff's arrest without probable cause, against Defendants Gray and Doe.

However, Plaintiff may not proceed on his false imprisonment and malicious prosecution claims because both claims differ in meaningful ways from the claim in *Bivens* and there are special factors that counsel against expanding the remedy. First, the claims are both premised on the allegation that Gray and Doe provided false statements as to arrest and imprison Plaintiff. The allegation of providing false information was not present in *Bivens*. This meaningful difference shows that Plaintiff's claim would present a new context for a *Bivens* claim. Additionally, Plaintiff's allegations regarding his prosecution necessarily includes the acts of prosecutors. The addition of prosecutors would likely expand *Bivens* to a new set of defendants—one historically afforded great discretion. *See Wayte v. United States*, 470 U.S. 598, 607–08 (1985) ("[T]he decision to prosecute is particularly ill-suited to judicial review."). Thus, the Court finds that Plaintiff's claims of false imprisonment and malicious prosecution differ in a meaningful way from *Bivens*.

Next, the Court must determine whether there are special factors counseling hesitation about creating a damages remedy in this new context. *Abbasi*, 137 S. Ct. at 1857. A relevant special factor is whether there are alternative methods of relief available because "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* at 1863. As explained in Section 2.3.3, *infra*, Plaintiff may bring a false imprisonment and malicious prosecution claim under the Federal Tort Claims Act. Thus, there are alternative remedies available to Plaintiff for his claims, which counsels strongly against expanding the *Bivens* remedy. Under similar facts, the Eighth Circuit and the Fifth Circuit have both refused to create a new *Bivens* remedy. *Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019) (refusing to imply a *Bivens* remedy for an officer's lies, manipulation of witnesses and falsification of evidence, in part because of the availability of alternative remedies); *Cantu v. Moody,* 933 F.3d 414, 423 (5th Cir. 2019) (refusing to imply a *Bivens* remedy to Fourth Amendment claims that officers made false statements in affidavits to induce prosecutors to charge the plaintiff with a crime, in part because the plaintiff could sue the United States under the Federal Tort Claims Act).

The Court finds that Plaintiff's false imprisonment and malicious prosecution claims would expand *Bivens* into a new context, and Plaintiff has alternative remedies available to him under the Federal Tort Claims Act. Therefore, in consideration of the Supreme Court's directive that expanding the *Bivens* remedy is now a disfavored judicial activity, this Court will not expand *Bivens* to Plaintiff's false imprisonment and malicious prosecution claims.

### 2.3.2.2 Eighth Amendment

The Supreme Court recognized a *Bivens* claim under the Eighth Amendment in *Carlson* based on federal officials' deliberate indifference to a federal prisoner's medical needs. 446 U.S. at 17–19. However, an Eighth Amendment *Bivens* claim is inapplicable to this case because Plaintiff has failed to state a claim for an Eighth Amendment violation. In the complaint, the only reference to the Eighth Amendment is under Count Five where Plaintiff writes, "CRUEL AND UNUSUAL PUNISHMENT – EIGHTH AMENDMENT VIOLATION". (Docket #1 at 10). This legal conclusion is not enough to state a claim. Fed. R. Civ. P. 8(a)(2). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Plaintiff has failed to provide any factual allegations to support his Eighth Amendment claim. Therefore, Plaintiff has failed to state a claim for an Eighth Amendment violation.

### 2.3.2.3 Thirteenth and Fourteenth Amendments

As the Supreme Court has not recognized a *Bivens* claim under the Thirteenth or Fourteenth Amendments, any *Bivens* claim regarding those Amendments would arise in a new context. Thus, the Court must move to step two of the analysis and determine whether there are any "special factors that counsel hesitation about granting the extension." *Hernandez*, 140 S. Ct. at 743. The "separation-of-powers" special factor is particularly relevant to this discussion. If the Court were to expand *Bivens* to the Thirteenth and Fourteenth Amendments, it would be creating two new damages actions after the Supreme Court has declined to do so for almost forty years. *See id.* Any change of this magnitude risks interfering with the authority of Congress. Thus, the "separation-of-powers" special factor counsels against expanding *Bivens* to the Thirteenth and Fourteenth

Amendments. Therefore, given the Supreme Court's directive that expanding the *Bivens* remedy is now a disfavored judicial activity and the "separation-of-powers" special factor counseling against expansion, this Court will not expand *Bivens* to the Thirteenth and Fourteenth Amendments.

### 2.3.3   Tort Claims

Plaintiff seeks to sue Defendants for false imprisonment, malicious prosecution, deceit, and state and federal tort—which the Court interprets as a claim for negligent or intentional infliction of emotional distress. As the claims for false imprisonment and malicious prosecution would extend *Bivens* into new contexts and there are alternative remedies available, and claims for deceit and negligent or intentional infliction of emotional distress do not implicate Constitutional violations, none of these tort claims may be brought under *Bivens*. *See Abbasi*, 137 S. Ct. at 1863 ("[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not."). Instead, if Plaintiff wants to proceed on his claims of false imprisonment, malicious prosecution, and negligent or intentional infliction of emotional distress, he must do so under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346(b); 2671-2680.

Under the FTCA, when state law provides a remedy for an alleged tort, a plaintiff must sue the United States, not an individual under *Bivens*. *See* 28 U.S.C. § 2680(h); *Abbasi*, 137 S. Ct. at 1858; *Malesko*, 534 U.S. at 70–74. Wisconsin recognizes the torts of malicious prosecution, false imprisonment, and negligent and intentional infliction of emotional distress. *See Strid v. Converse*, 331 N.W.2d 350, 353–54 (Wis. Ct. App. 1994) (outlining the elements of a malicious prosecution claim); *Herbst v. Wuennenberg*, 266 N.W.2d 391, 394–95 (Wis. 1978) (outlining the elements

Case 2:20-cv-00741-JPS   Filed 08/27/21   Page 12 of 21   Document 10

of a false imprisonment claim); *Rabideau v. City of Racine*, 627 N.W.2d 795, 800–03 (Wis. 2001) (outlining the elements of negligent and intentional infliction of emotional distress claims). Therefore, all three claims may be brought under the FTCA. However, Plaintiff may not proceed on his tort claims against Defendants because the FTCA may be brought only against the United States. *See* 28 U.S.C. § 2680(h); *see Abbasi*, 137 S. Ct. at 1858; *Malesko*, 534 U.S. at 70–74. Thus, Plaintiff may not proceed on his malicious prosecution, false imprisonment, and negligent and intentional infliction of emotional distress claims because he has not brought the claims against the proper party.

Lastly, Plaintiff attempts to state a claim for "Deceit under 28 U.S.C. § 2671." (Docket #1 at 9–10). However, deceit is expressly excluded as an actionable claim under the FTCA. 28 U.S.C. § 2680(h) ("The provisions of this chapter and section 1346(b) of this title shall not apply to . . . . Any claim arising out of . . . deceit . . . ."). Therefore, Plaintiff may not proceed on a claim for deceit.

### 2.3.4    Personal Involvement

Plaintiff named ABC Insurance Company as a defendant in this case. (Docket #1 at 4). However, because Plaintiff has made no allegations that ABC Insurance Company participated in any part of the alleged constitutional violations or tortious actions, ABC Insurance Company must be dismissed. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 556 U.S. at 676. Therefore, ABC Insurance Company will be dismissed from this case.

3.    **PENDING MOTIONS**

The Court now turns to Plaintiff's pending motion to proceed *in forma pauperis*, (Docket #6), motion for justice, (Docket #8), and motion for a status hearing, (Docket #9). In all three motions, Plaintiff requests that the Court grant his motion to proceed without prepayment of the filing fee. (Docket #6 at 1; #8 at 1; #9 at 1–2). As the Court has granted Plaintiff's initial motion to proceed without prepayment of the filing fee (Docket #2) in Section 1, *supra*, this issue is now moot.

Additionally, in his motion for justice and for a status hearing, Plaintiff requests that this Court recuse itself. (Docket #8 at 1–3; #9 at 2–3). Plaintiff brings his motions for recusal pursuant to 28 U.S.C. § 455. Under § 455(a), a federal judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," whereas § 455(b)(1) provides that a judge shall disqualify himself if he "has a personal bias or prejudice concerning a party." Under § 455(a), "the party must show an objective, disinterested observer fully informed of the reasons for seeking recusal would 'entertain a significant doubt that justice would be done in the case.'" *United States v. Simon*, 937 F.3d 820, 826 (7th Cir. 2019) (quoting *United States v. Herrera-Valdez*, 826 F.3d 912, 917 (7th Cir. 2016)). "In determining whether a judge must disqualify himself under 28 U.S.C. § 455(b)(1), 'the question is whether a reasonable person would be convinced the judge was biased.'" *Hook v. McDade*, 89 F.3d 350, 355 (7th Cir. 1996) (quoting *Lac du Flambeau Indians v. Stop Treaty Abuse-Wis.*, 991 F.2d 1249, 1255 (7th Cir. 1993)). Recusal under § 455(b)(1) "is required only if actual bias or prejudice is 'proved by compelling evidence.'" *Id.* (quoting *United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985), *overruled on other grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016)).

The only evidence Plaintiff provides in support of his requests for recusal are generalized statements regarding a grievance he filed about this Court in another case. (Docket #8 at 1–3; #9 at 1–2). A generalized statement about a grievance filed in a different case is not enough to show that an objective reasonable person would entertain significant doubt that justice would be done in this case or be convinced that the judge is biased. *See United States v. Barr*, 960 F.3d 906, 920–21 (7th Cir. 2020) ("Adopting Barr's reasoning would require us to believe that federal judges hold grudges against all attorneys who are involved in any case in which the district judge's decision gets reversed on appeal. And critically, it would also require us to believe that district judges respond to that grudge by demonstrating unfairness toward those attorneys and their clients. We will not assign such a petty disposition to federal judges."). In sum, Plaintiff has not submitted compelling evidence that this Court has personal prejudice or bias against him or that this Court's impartiality could reasonably be questioned. Therefore, the Court will deny Plaintiff's requests for recusal.

Lastly, in his motion for a status hearing, Plaintiff requests that the Court appoint him counsel. (Docket #9 at 2). As a civil litigant, Plaintiff has no automatic right to court-appointed counsel. *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997). However, under 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to the Court's

discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of the plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When the Court recruits a lawyer to represent a *pro se* party, the lawyer takes the case *pro bono*. Unlike a lawyer appointed to represent a criminal defendant during his prosecution, who is paid by the government for his work, an attorney who takes a prisoner's civil case *pro bono* has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, to accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is eternally grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Although the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute (such as in successful Section 1983 cases) but they will otherwise go unpaid. The small pool of attorneys available to this District for *pro bono* appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent *pro se* plaintiffs on

appeal. *See, e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the *pro se* appellant); *McCaa*, 893 F.3d at 1029 (same).

Against the thin ranks of ready and willing counsel rises the overwhelming tide of *pro se* prisoner litigation in this District.[1] In 2010, approximately 300 civil actions were filed by prisoner litigants. More than half sought habeas corpus relief, while the remainder were Section 1983 actions alleging violations of constitutional rights. Since then, the number of habeas corpus cases has remained largely steady at around 130 per year, while the volume of Section 1983 lawsuits has skyrocketed. About 300 Section 1983 actions were filed in 2014, and another 300 in 2015—each equal to the entirety of the District's civil prisoner filings from just four years earlier. In 2016, Section 1983 actions numbered 385, in 2017 it ballooned to 498, in 2018 it grew to 549, in 2019 it dipped to 496, and in 2020, during the COVID-19 pandemic, 515 cases were filed. All told, well over a third of the District's new case filings are submitted by unrepresented inmates. Realistically, this District has the resources to consider appointment of counsel in only a tiny fraction of these cases.

Finally, it must be remembered that when the Court determines that counsel recruitment is appropriate, it can take months to locate a willing

---

[1]Although non-prisoner *pro se* litigants may also be considered for the appointment of counsel under Section 1915, the Court does not address that set of *pro se* litigants here for a few reasons. First, the volume of non-prisoner *pro se* litigation is miniscule compared to that brought by prisoners. Second, prisoners are much more likely to request the appointment of counsel. Paradoxically, prisoners are usually far better equipped to litigate than non-prisoners, as prisoners have access to electronic filing, institution law libraries, and fellow prisoners who offer services as "jailhouse lawyers." Yet, learning a little of the legal system means that prisoners know they can request the appointment of *pro bono* counsel, which they do with regularity.

lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are the Court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, the Court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a Section 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if the Court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a *pro se* prisoner should reach out to lawyers whose areas of practice suggest that

they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

In this case, Plaintiff states that he has contacted Ben Crump Law about representing him in this case and he attached a letter from that firm regarding the next steps for reviewing Plaintiff's claim. (Docket #9 at 2; Docket #9-1). Plaintiff's showing of one letter is insufficient to satisfy the first element. Plaintiff must demonstrate that he sought representation from at least three lawyers who actually practice in this area before asking the Court to appoint him counsel. The Court acknowledges that this places an additional burden on Plaintiff, but his request for *pro bono* appointed counsel is a serious one and cannot be taken lightly. Thus, Plaintiff has failed to satisfy the first element in *Pruitt* and the Court need not go further in its analysis. The Court will deny Plaintiff's request for the Court to appoint him counsel.

**4.      CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Fourth Amendment *Bivens* claim, regarding Plaintiff's arrest without probable cause, against Defendants Gray and Doe.

Accordingly,

**IT IS ORDERED** that Plaintiff's initial motion for leave to proceed without prepaying the filing fee (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant ABC Insurance Company be and the same is hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Docket #6) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for justice (Docket #8) and motion for a status hearing (Docket #9) be and the same are hereby **DENIED**;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants Timothy P. Gray and Doe;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the complaint within 60 days;

**IT IS FURTHER ORDERED** that Plaintiff must pay the $320.17 balance of the filing fee over time as he is able. His payments shall be clearly identified by the case name and number assigned to this action. Plaintiff may mail his payments to the Clerk's Office at Office of the Clerk, United States District Court, Eastern District of Wisconsin, 362 United States Courthouse, 517 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202;

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order; and

**IT IS FURTHER ORDERED** that Plaintiff must submit the original document for each filing to the Court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 27th day of August, 2021.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge